**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ISRAEL CARTAGENA
ANNIELI ACEVEDO
MARYALICE ALSTON-HARRIS
JEANETTE BATISTA
JUANA BRISITA
TRACY PRICE
NICOLE WILLIAMS
MELODY ABBOTT
SHAREEFA ABDUL-ALI
NORIZA ABDUL-BESASIR
HABIBAH ABDULLAH
NAIMAH H. ABDULLAH
NAJIFA ABDULLAH
NAILAH ABDUL-QAADIR
SHEK ABDUR RAHIM
HANNAH  ABIMBOLA
VARGHESE  ABRAHAM
EDWIN ACEVEDO
ERIC ACEVEDO
KAYLA ACEVEDO
SERRAYA ACEVEDO
CYNTHIA ACEVEDO NIEVES
SARA ACHBANI
MARIELA ACOSTA
MAXIMINO ACOSTA
DISHON ADAMS
KAREN ADAMS
MEKA ADAMS
TOSHER ADAMS
TROY ADAMS
DAWN ADDISON
ABIMBOLA ADEYENI
JULIE ADGER
ARLENE ADORNO
JULIA ADORNO
SABINA AFROZ
UDDIN AFSAR
LINDEN AGARD
WANDA AGEE

Case No: _____

(JURY TRIAL DEMANDED)

1

DESIRE AGOSTINI
LUISA AGOSTO
JOSUE AGUDO
NATASHA AGUILAR
SANDRA AGUIRRE
FARAMADE AGUNLOYE
RUTH AHAMAD
MURAD AHMED
ZUBAYER AHMED
SHAWN AIKEN
LISA AIMI
JANET AJIBADE
EMILY AKADE
HUNA AKHTAR
AVWEROSUO AKPOWOWO
FERDOUSI AKTER
MST AKTER

      Plaintiffs,

      v.

CITY OF NEW YORK and NEW YORK
CITY POLICE DEPARTMENT,
      Defendants.

## COMPLAINT

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, pursue this complaint against the City of New York ("New York City") and the New York City Police Department, and state as follows:

## INTRODUCTION

1.     Plaintiffs are current and former employees of the Defendants, City of New York and the New York City Police Department ("Defendants" or "City"), in the position of School Safety Agent ("SSA"). Plaintiffs bring this action against Defendants for back pay, liquidated

damages, attorneys fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendants' willful and unlawful violations of federal law complained of herein.

2.      Plaintiffs bring this action on behalf of themselves and all others similarly situated as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendants' failure to pay Plaintiffs overtime compensation to which Plaintiffs are entitled under the FLSA. Plaintiffs are similarly situated to each other because when employed by the City in the position of SSA, they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants suffered or permitted Plaintiffs to perform uncompensated overtime work outside of their paid shifts and during their unpaid meal periods. Plaintiffs are also similarly situated to each other because, while employed by the City, they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants fail to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based and fails to pay overtime compensation in a timely manner. Lastly, Plaintiffs are similarly situated to each other because, while employed by Defendants, they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendants fail to compensate them for travel-time work between jobsites.

## PARTIES

3.      All Plaintiffs identified in the caption gave their written consent to be party Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint as Exhibit A. These written consent forms set forth each Plaintiff's name and address.

4.      Each of the Plaintiffs in this action while employed by Defendants has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

5.      Since approximately April 2023, Plaintiff Israel Cartagena has worked as an SSA at Transit Tech Career and Technical Education High School located at 1 Wells St, Brooklyn, NY in the Brooklyn North Command. From December 2004 to April 2023, Mr. Cartagena worked as an SSA at P.S. 302 located at 350 Linwood St., Brooklyn, NY in the Brooklyn North Command. At all times material herein, Plaintiff Jeanette Batista has worked as an SSA providing security services as part of a Mobile Task Force in the Bronx East Command. At all times material herein, Plaintiff Juana Brisita has worked as an SSA at P.S. 021 located at 147-36 26th Avenue, Queens NY in the Queens North Command. At all times material herein, Plaintiff Tracy Price has worked as an SSA at W.H. Maxwell Career and Technical Education High School located at 145 Pennsylvania Ave., Brooklyn, NY in the Brooklyn North Command.  At all times material herein, Plaintiff Nicole Williams has worked as an SSA at J.H.S. 278 Marine Park located at 1928 Stuart St., Brooklyn, NY in the Brooklyn South Command. At all times material herein, Plaintiff Annieli Acevedo has worked as an SSA at George Washington High School located at 549 Audobon Avenue, New York, NY in the Manhattan North Command. Plaintiff Maryalice Alston-Harris has worked at the Richmond Pre-K Center located at 2530 Victory Boulevard, Staten Island, NY in the Staten Island Command at all times material herein, except for from May to June 2023 when she worked at the P.S. 22 located at 1860 Forest Avenue, Staten Island, NY.

6.      Defendant New York City is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). New York City has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

4

7.     Defendant New York City Police Department is an administrative division of the City of New York and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The NYPD's principal office is located at One Police Plaza, New York, NY 10007.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

10.     Plaintiffs are, and/or at all times material herein have been, employed by Defendants in the position of School Safety Agent at the NYPD.

11.     Within the last three years and continuing to date, while working in the SSA position, the job duties of Plaintiffs Cartagena, Batista, Brisita, Price, Williams, Acevedo and Alston-Harris (collectively referred to herein as "representative plaintiffs"), and all other Plaintiffs (i.e., the Plaintiffs listed in Exhibit A and all future Plaintiffs) include but are not limited to: providing security services in New York City's public-school buildings and surrounding areas; patrolling school facilities and the surrounding areas; operating and maintaining security equipment, including but not limited to metal detectors, x-ray machines and vertex machines; performing security screenings by verifying identification and screening personal belongings; escorting visitors; responding to altercations between students and other persons; de-escalating conflicts; separating persons involved in altercations; reporting unsafe and unusual conditions; maintaining crowd control; facilitating community outreach; safeguarding seized property; writing

incident reports; maintaining an activity log and in the case of individuals assigned to Mobile Task Force, providing security services by traveling in vehicles within a particular borough.

12.     While working as SSAs, Plaintiffs and all others similarly situated regularly work 40 hours a week. Plaintiffs are regularly scheduled to work 42 hours and 30 minutes per week, with 30 minutes automatically deducted per day for meal periods.  In addition, as described in further detail below, all Plaintiffs frequently perform the job duties described in Paragraph 11 before the start of their scheduled shift, after the end of their scheduled shift, and during their 30-minute unpaid meal periods.

13.     Because all Plaintiffs are scheduled for 42 hours and 30 minutes per week with 30 minutes per day automatically deducted for meal periods, they are scheduled to work, and do work, at least 40 hours per workweek. Thus, any time that all Plaintiffs perform the uncompensated job duties described in Paragraph 11 outside of their regularly scheduled shift or during their unpaid meal periods, they necessarily perform overtime work above the 40 hour per workweek threshold that the FLSA establishes as requiring overtime pay. 29 U.S.C. § 207(a).

14.     In addition to their scheduled shifts and their preapproved, compensated overtime, Plaintiffs routinely work additional hours such that they work over 40 hours in a work week, but Defendants fail to compensate Plaintiffs and all others similarly situated for all of these hours over 40 at a rate of one and one-half times their regular rate of pay. Specifically, Defendants fail to compensate Plaintiffs and all others similarly situated for hours worked outside of their scheduled shifts or preapproved overtime, and for work performed during their unpaid, 30-minute meal periods.

15.     Additionally, when Plaintiffs perform preapproved overtime that Defendants do compensate them for, Defendants nevertheless systematically fail to pay them for this overtime work at the correct regular rate of pay.

16.     Defendants capture the work hours of SSAs, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on time cards and paper sign-in sheets.

17.     Plaintiffs' timekeeping and payroll data is in Defendants' exclusive possession and is not readily available to Plaintiffs.

### ***Defendants' Fair Labor Standards Act Violations Are Willful***

18.     Upon information and belief, Defendants compensate Plaintiffs on a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out). As such, although minutes of Plaintiffs' pre-shift and post-shift work time is captured by their time cards and entered into timesheets which are reviewed on a weekly basis by Plaintiffs' supervisors, Plaintiffs are nevertheless only paid for their scheduled shift hours unless they have received prior approval to work overtime.

19.     Defendants are well aware of their obligation to pay employees for overtime work which is suffered or permitted. Indeed, the City has been held liable for failing to pay SSAs, many of whom are the same Plaintiffs as in this action, for overtime work performed, yet have made no changes to the manner in which it compensates Plaintiffs for their overtime work as a result. *See Worley v. City of New York* 17 Civ. 4337 (LGS), 2020 U.S. Dist. Lexis 26398 (S.D.N.Y. Feb. 12, 2020); *see also Perry v. City of N.Y.*, 1:13-cv-01015 (S.D.N.Y.) (jury verdict in favor of plaintiffs, $17,780,063 judgment entered), *aff'd* 21-2095 (2d Cir. Aug. 25, 2023). *See also See, e.g., Foster*

*v. City of New York,* 2017 U.S. Dist. Lexis 227758 (S.D.N.Y. Sept. 30, 2017) (granting summary judgment for plaintiff New York City employees on FLSA claims that they worked uncompensated overtime about which their managers were aware); *De La Cruz v. City of New York,* 2017 U.S. Dist. Lexis 227758 (S.D.N.Y. Sept. 30, 2017) (same).

20.     Upon information and belief, Defendants have failed to conduct an audit or otherwise investigate the amount of uncompensated work performed outside of the paid shift and during unpaid meal period times.

21.     Defendants have failed to seek advice from the United States Department of Labor regarding whether its pay policies and practices comply with the FLSA.

22.     Supervisors are aware of when Plaintiffs are working, and the nature and timing of the work, even if it happens outside of the Plaintiffs' scheduled shifts, or during a meal period because, among other things, Defendants track Plaintiffs' worktime through their time cards and timesheets, Plaintiffs' supervisors observe and are notified when uncompensated work is being performed and review Plaintiffs' time records, and as Defendants are aware, the nature of Plaintiffs' work requires them to work this additional time.

23.     Defendants have not disciplined any SSA for performing unpaid work outside of their scheduled shifts, or for working during their unpaid meal periods.

### ***Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated***

24.     While working as SSAs, Plaintiffs and all others similarly situated routinely work over 40 hours in a week. Plaintiffs are scheduled for five shifts of eight and one-half hours in length each week, with thirty minutes automatically deducted from each shift as an uncompensated meal period. Thus, Plaintiffs and all others similarly situated are scheduled to perform and do

perform a minimum of 40 hours of work per workweek. In addition, Plaintiffs regularly work preapproved, compensated overtime each week.

25.     In addition to their 40 hours of regularly scheduled shifts and compensated overtime, Plaintiffs and all others similarly situated frequently work additional hours in which they perform their regular job duties, but do not receive compensation. Specifically, Plaintiffs routinely work additional hours before the official start time of their regularly scheduled shifts, after the end of their regularly scheduled work shifts, and during their unpaid meal periods, all without overtime compensation. As such, Plaintiffs and all others similarly situated regularly work additional uncompensated hours which are in excess of 40 in a workweek.

26.     Plaintiffs and all others similarly situated regularly begin work before the official start time of their shifts and after the end of their official shifts. Plaintiffs' pre-shift work includes, but is not limited to, the tasks listed in Paragraph 11, as well as work spent preparing for their shift by setting up scanning equipment, inspecting school exists, preparing paperwork for the shift, opening and unlocking the building,  preparing for the arrival of students and staff, and in the case of Plaintiffs assigned to Mobile Task Force, securing and readying a vehicle.. Plaintiffs' post-shift work includes, but is not limited to, the tasks listed in Paragraph 11, as well as monitoring that all students and staff have safely vacated the schools.

27.     Plaintiffs and all others similarly situated work during some or all of their 30-minute unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraph 11), including but not limited to responding to and intervening in incidents occurring within their assigned school and surrounding areas such as fights among students. Plaintiffs are not compensated for this meal-period work time.

28.    Plaintiff Israel Cartagena routinely works over 40 hours in a workweek. When he does so, the City fails to compensate him for all of his time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of his scheduled shift, and during his 30-minute unpaid meal period. Specifically, Plaintiff Cartagena's regularly scheduled shift begins at 6:30 am and ends at 3:00 pm, Monday through Friday. Plaintiff Cartagena arrives approximately 30 minutes prior to the start of his scheduled shift start time every day. At Tech Career and Technical High School, he immediately begins working upon arrival, without being compensated for that pre-shift work time, by preparing security scanners and equipment, preparing paperwork, and scanning and signing in staff and visitors to the building.  At P.S. 302, he began working upon arrival, without being compensated for that pre-shift work time, by opening and unlocking the building for arrival, preparing for roll call, preparing for the arrival of students and staff, and handling any required paperwork.  Plaintiff Cartagena also works through his entire meal period approximately one to two times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to incidents such as fights and completing required paperwork. Thus, Plaintiff Cartagena is not compensated for at least approximately three hours of additional overtime work beyond his scheduled shift per week.

29.    Plaintiff Jeanette Batista, who is assigned to Mobile Task Force, routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Batista's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Batista arrives approximately 15-30 minutes prior to the start of her scheduled shift start time every day. Upon arrival to the Bronx State Hospital where her assigned

NYPD vehicle is located, she immediately begins working, without being compensated for that pre-shift work time, by inspecting and retrieving her vehicle prior to her shift. Plaintiff Batista also works through her entire meal period approximately four to five times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to emergency incidents. Ms. Batista has also regularly worked after the end of her scheduled shift (including after any scheduled/preapproved overtime shift) for approximately 15 to 30 minutes, performing the duties described in Paragraphs 11 and 26 such as responding to emergency incidents. Thus, Plaintiff Batista is not compensated for at least approximately three hours and fifteen minutes of additional overtime work beyond her scheduled shift per week.

30.    Plaintiff Juana Brisita routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Brisita's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Brisita arrives approximately 15 to 30 minutes prior to the start of her scheduled shift start time every day. Upon arrival, she immediately begins working, without being compensated for that pre-shift work time, by preparing security cameras, checking the doors to the building, handling required paperwork, and preparing the school for entry. Plaintiff Brisita also works through her entire meal period approximately three to five times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to incidents and remaining at the security desk until there is authorized personnel to relieve her. Ms. Brisita has also regularly worked after the end of her scheduled shift (including after any scheduled/preapproved overtime shift) for approximately 15 to 30 minutes, performing the duties described in Paragraphs 11 and 26 as well as continuing to patrol the school until all

students and staff have left the building and locking the doors to the building. Thus, Plaintiff Brisita is not compensated for at least approximately three hours of additional overtime work beyond her scheduled shift per week.

31.     Plaintiff Tracy Price routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Price's regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Price arrives approximately 30 to 45 minutes prior to the start of her scheduled shift start time every day. Upon arrival, she immediately begins working, without being compensated for that pre-shift work time, by preparing security scanners and equipment, preparing and sending in paperwork, and scanning and signing in staff and visitors to the building.  Plaintiff Price also works through her entire meal period approximately one to two times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to incidents, completing required paperwork, and monitoring and assisting the students in the building. Ms. Price has also regularly worked after the end of her scheduled shift (including after any scheduled/preapproved overtime shift) for approximately 15 minutes, performing the duties described in Paragraphs 11 and 26. Thus, Plaintiff Price is not compensated for at least approximately three hours and fifteen minutes of additional overtime work beyond her scheduled shift per week.

32.     Plaintiff Nicole Williams routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Williams' regularly scheduled shift

begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Williams works through her entire meal period approximately two to three times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to incidents, completing required paperwork, and working with emergency medical technicians when they arrive at the school to document the necessary information. Approximately three times per week, Plaintiff Williams also works after the end of her scheduled shift (including after any scheduled/preapproved overtime shift) for approximately 15-30 minutes, performing the duties described in Paragraphs 11 and 26 as well as continuing to patrol the school until the students and staff have left the building. Thus, Plaintiff Williams is not compensated for at least approximately two hours and fifteen minutes of additional overtime work beyond her scheduled shift per week.

33.    Plaintiff Annieli Acevedo routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Acevedo's regularly scheduled shift begins at 7:30 am and ends at 4:00 pm, Monday through Friday. Plaintiff Acevedo arrives approximately 15-30 minutes prior to the start of her scheduled shift start time every day. Upon arrival she begins working, without being compensated for that pre-shift work time, by preparing security scanners and equipment as well as additional protective equipment including handcuffs and utility belt. Plaintiff Acevedo also works through her entire meal period approximately one to two times per week, performing the duties listed in Paragraphs 11 and 27 such as responding to incidents. Thus, Plaintiff Acevedo is not compensated for at least approximately two hours of additional overtime work beyond her scheduled shift per week.

34.    Plaintiff Alston-Harris routinely works over 40 hours in a workweek. When she does so, the City fails to compensate her for all of her time, including but not limited to time spent performing tasks enumerated in Paragraphs 11 and 26 outside of her scheduled shift, and during her 30-minute unpaid meal period. Specifically, Plaintiff Alston-Harris' regularly scheduled shift begins at 7:00 am and ends at 3:30 pm, Monday through Friday. Plaintiff Alston-Harris arrives approximately 15-30 minutes prior to the start of her scheduled shift start time every day. After arrival, she begins working, without being compensated for that pre-shift work time, by preparing security cameras, checking the doors to the building, handling required paperwork including the command log book, and preparing the school for entry. Plaintiff Alston-Harris has also worked through her entire meal period approximately five times per week, performing the duties listed in Paragraphs 11 and 27 such as monitoring the building and security cameras, signing in visitors, and remaining at the security desk until there is authorized personnel to relieve her. Thus, Plaintiff Alston-Harris is not compensated for at least approximately two hours of additional overtime work beyond her scheduled shift per week.

35.    All SSAs employed by Defendants are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendants fail to compensate SSAs for pre-shift, post-shift, and meal period work that was not pre-approved in advance. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendants' timekeeping system and through other work and pay records, which are in the Defendants' exclusive custody and control.

## *Failure to Compensated Plaintiffs for Travel Time Between Work Sites*

36.     Defendants fail to compensate Plaintiffs for time spent traveling between work sites when Plaintiffs perform overtime work at a different school location and/or campus immediately following their regularly scheduled shift.

37.     During the last three years, the Defendants schedule Plaintiffs for overtime shifts closely following their regularly scheduled shift at a school or campus other than their regular duty location. On those occasions, Plaintiffs are required to clock out for the time spent traveling from one job site to the next and are not paid for the travel time. Plaintiffs will then clock back in once they arrive at the location of the overtime shift and their pay will resume for the overtime shift.

38.     When Plaintiffs travel to a second work location for an authorized overtime shift, they do not have time for personal activities.

39.     By policy, the Defendants failure to pay Plaintiffs overtime compensation for time spent traveling between worksites, even though the NYPD pays non-civilian, uniformed employees for such travel time.

40.     For example, during the last three years, Plaintiff Brisita has worked a paid shift at one worksite, clocked out, and travelled approximately 25 minutes to begin an overtime shift at a second worksite that started 30 minutes after she clocked out. Plaintiff Brisita has never been paid for the travel time between assignments, and NYPD policy required her to clock out for her time spent travel between worksites, even though she had not time for personal activities during the time spent travelling between worksites.

41.     Because Defendants' policy is to not record this travel time and for Plaintiffs to remain off the clock while they travel, Plaintiffs do not receive any compensation for the time spent traveling between work sites in violation of the FLSA. *Worley v. City of N.Y.*, 1:17-cv-

04337, 2020 U.S. Dist. Lexis 26398, at *76 (S.D.N.Y. Feb. 12, 2020) (holding, as a matter of law, that NYPD and the City of New York were aware that SSAs perform uncompensated travel-time work and granting summary judgment to plaintiffs).

42.    All locations to which SSAs are assigned are located within 50 miles of each other and are all within the boundaries of the City of New York.

### *The Rate at Which Overtime is Paid*

43.    Pursuant to NYPD policy applicable to all Plaintiffs as set forth in the Civilian Employee Reference Manual, Plaintiffs earn night shift differential under the following circumstances: "Civilian employees receive a shift differential (or payment) of an additional 10% added to their hourly salary if more than one (1) hour over their tour duration is worked, excluding meal, between 1800 hours [6:00 p.m.] and 0800 hours [8:00 a.m.]."

44.    For example, during the past three years, Plaintiff Cartagena has earned a night shift differential while working as an SSA during weeks in which he also earned overtime compensation. Plaintiff Cartagena regularly earned a night shift differential while working a shift which began at 6:30 am and thus covered time between 6:00 p.m. and 8:00 a.m. Plaintiff Cartagena also regularly works approved additional overtime shifts in the same workweeks that he has earned night shift differential, and has done so repeatedly in the last three years. However, on those occasions, including, for example, the week of September 10-23, 2023, Defendant failed to include the night shift differential in the calculation of his overtime rate during those workweeks.

45.    Pursuant to NYPD policy, Plaintiffs also earn meal allowances, which is an additional amount provided to employees when they work overtime and agree to accept payment in compensatory time. Those amounts are taxed and are not expense reimbursements.

16

46.    Within the last three years, as well as before, the City failed to include these differentials in the regular rate of pay when Plaintiffs earned a differential and worked overtime in the same week. In fact, on February 12, 2020, Judge Lorna Schofield ruled that the Defendants violated the FLSA by failing to properly include night shift differential and meal allowances in the regular rate of pay. *Worley v. City of N.Y.*, 1:17-cv-04337, 2020 U.S. Dist. Lexis 26398, at *76 (S.D.N.Y. Feb. 12, 2020).

47.    Defendants have made no changes to their pay practices since Judge Schofield's 2020 Decision and Plaintiffs therefore have not been paid overtime at the required regular rate of pay.

## *Late Payment of Overtime Worked*

48.    During the last three years, when the City does compensate Plaintiffs for hours worked over 40 in a workweek, the City regularly delays the payment of overtime beyond the next pay period for which the Plaintiffs are paid for their regular work hours and in compensatory time for their overtime hours. These late payment violations are readily apparent from the Defendants' pay and hours worked data, which is the exclusive possession of the Defendants.

49.    The delay in payment is done either because of managerial delays in acquiring the required approvals to pay Plaintiffs for their overtime, or for other reasons that are unrelated to the City's ability to determine the amount of overtime compensation that is owed to the Plaintiffs. Defendants have violated the basic principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

## COUNT I

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE
SUFFERED OR PERMITTED TO WORK IN VIOLATION OF
SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

50.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 49 in their entirety

and restate them herein.

51.    At all times material herein, during those workweeks in which Plaintiffs, and all

others similarly situated, have worked hours in excess of 40 hours a week, they have performed

work activities, including but not limited to when they are performing tasks enumerated in

Paragraphs 11 and 26 outside of their scheduled shifts and without compensation, all of which is

recorded by Defendants' timekeeping systems. Plaintiffs, and all others similarly situated, also

have performed work, including but not limited to the tasks enumerated in Paragraphs 11 and 27,

during their unpaid meal periods. This work outside of Plaintiffs' shifts and during their meal

periods has caused Plaintiffs to work in excess of 40 hours in a given week. Accordingly, as a

result of these pay practices, Defendants have failed to provide Plaintiffs with the rights and

protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

52.    Section 207 of the FLSA requires the payment of overtime compensation to

employees who work in excess of the hourly standards set forth therein. In particular, Section

207(a) requires the payment of overtime compensation at the rate of one and one-half times each

employee's regular rate of pay for all hours employees are suffered or permitted to work in excess

of 40 hours per week. Defendants have failed to comply with the overtime pay requirements of the

FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have

been suffered or permitted to work outside of their official shifts, and during their uncompensated

meal periods.

53.     Pursuant to 29 C.F.R. § 785.38, "[t]ime spent by an employee as part of her principal activity, such as travel from job site to job site during the work day, must be counted as hours worked." Accordingly, when Plaintiffs travel between job sites to perform additional work at an alternative location immediately following their regularly scheduled shift, such time must be compensated at one and one-half times the plaintiffs' regular rate of pay. Defendants have further failed to comply with the overtime pay requirements of Section 7 of the FLSA by failing to compensate Plaintiffs for such travel time and requiring that Plaintiffs clock out for the time spent traveling between job locations. *Worley v. City of N.Y.*, 1:17-cv-04337, 2020 U.S. Dist. Lexis 26398, at *76 (S.D.N.Y. Feb. 12, 2020) (holding, as a matter of law, that NYPD and the City of New York were aware that SSAs perform uncompensated travel-time work and granting summary judgment to plaintiffs).

54.     As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendants and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA.

55.     Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

56.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendants' failure to pay overtime compensation as alleged herein.

57.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**COUNT II**

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA**

58.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 49 in their entirety and restate them herein.

59.     Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendants have failed to include certain types of additional compensation, such as a meal allowance, in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and of all others similarly situated, resulting in Defendants paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA. Defendants' failure to include all applicable forms of compensation in Plaintiffs' regular rates of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

60.     As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendants and its public agencies, and Plaintiffs are unable to

state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendants' liability can be ascertained.

61.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

62.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **COUNT III**

### **FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS AFTER THE OVERTIME WAS WORKED**

63.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 49 in their entirety and restate them herein.

64.     The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying for weeks, Plaintiffs' overtime payments for working in excess of 40 hours a week, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments, management withholding such payments until the next budgetary

quarter, or some other reason unrelated to Defendant's ability to calculate the amount owed to Plaintiffs.

65.    As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, "While 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that 'two weeks is an unreasonably amount of time for an employer to delay a paycheck [under the FLSA].'" No. 7:17-cv-07804 (NSR), 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

66.    As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendant's liability can be ascertained.

67.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

68.    Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a)    Order a complete and accurate accounting of all the compensation to which the Plaintiffs are entitled;

(b)    Award Plaintiffs and those similarly situated monetary damages in the form of back pay for their unpaid compensation;

(c)    Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(d)    Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(e)    Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendants, and the costs and disbursements of this action; and

(f)    Grant such other relief as may be just and proper.

Date: October 4, 2023                    Respectfully submitted,

                                          _/s/ Hope Pordy_
                                          Hope Pordy
                                          Elizabeth Sprotzer
                                          SPIVAK LIPTON LLP
                                          1040 Avenue of the Americas
                                          20th Floor
                                          New York, NY 10018
                                          Phone: (212) 765-2100

                                          _/s/ Gregory K. McGillivary_
                                          Gregory K. McGillivary
                                          _(pro hac vice motion forthcoming)_
                                          Diana J. Nobile
                                          _(pro hac vice motion forthcoming)_
                                          Sarah M. Block
                                          McGILLIVARY STEELE ELKIN LLP
                                          1101 Vermont Ave., N.W.
                                          Suite 1000
                                          Washington, DC 20005
                                          Phone: (202) 833-8855

                                          _Counsel for Plaintiffs_